[Cite as *State v. Leach*, 195 Ohio App.3d 433, 2011-Ohio-4745.]


COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


THE STATE OF OHIO,

     Appellee,

v.

LEACH,

     Appellant.

JUDGES:
Hon. Sheila G. Farmer, P. J.
Hon. John W. Wise, J.
Hon. Julie A. Edwards, J.

Case No. 11 CAA 02 0009


O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No.  10 CR I 07 0348 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | September 16, 2011 |

APPEARANCES:

Carole Hamilton O'Brien, Delaware County Prosecuting Attorney, and
Douglas Dumolt, Assistant Prosecuting Attorney, for appellee.

William T. Cramer, for appellant.

**WISE, Judge.**

{¶ 1}  Defendant-appellant, Gregory S. Leach, appeals his conviction and sentence entered in the Delaware County Common Pleas Court, following a jury trial.

{¶ 2}  Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶ 3}  In July 2007, Leach was hired as a retail sales representative by Rex Gore, the owner of Black Wing Shooting Center.  Black Wing Shooting Center is a full-service, federally licensed firearms dealer and shooting range.

{¶ 4}  Black Wing used a point-of-sale system to track its sales and inventory.  In October 2008, Gore directed Robin Salvo, the manager and computer technician for Black Wing, to implement the security features that they had previously not been using.  These new security features allowed Gore to run audit reports on his point-of-sale system, making it possible for him to track the activities of each username registered on the system.

{¶ 5}  Upon studying the audit reports, Gore noticed a number of irregular transactions, including transactions where items had been taken out of the electronic inventory without authorization.  Gore then directed Salvo to determine who had been altering the inventory numbers.  Upon further investigation, Salvo discovered that the

inconsistent inventory transactions had been done under multiple usernames and that appellant had been working when each of the transactions occurred. Salvo also discovered that many of the same items that were missing from Black Wing's inventory had been posted for sale on various web sites by appellant. Further, appellant had removed a large gun safe from Black Wing's inventory and arranged to have it delivered to his father's house.

{¶ 6} Gore also noticed a number of voided sales of concealed-carry classes, which are courses that are required in order to obtain a concealed-weapons permit. Depending upon when the customer registered, these classes would cost either $150 or $175. If these classes are later voided, it would create an overage in the register system. Gore noticed, however, that each of the voided class transactions was either immediately preceded or followed by a deposit to a layaway account for a rifle under the name of Stephen Leach, appellant's father. In total, there were seven deposits to the layaway account, five of which were closely associated with voided concealed-carry class transactions. Appellant did make two deposits with his debit card towards the layaway account, amounting to a total of $262.50. The retail price of the rifle was over $1,000. The entire remaining balance was removed by deposits associated with voided concealed-carry classes, and each of these transactions was processed under appellant's username. Once the final deposit from the voided transaction had been made, appellant removed the rifle from Black Wing and gave it to his father. Gore stated that he had never reported the rifle as stolen and had never reported a theft of the firearm to the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives,

because he knew the location of the rifle and appellant's father had already informed him that he was going to return it.

{¶ 7} Appellant was accused of a number of improprieties while working at Black Wing, including the unauthorized removal of various gun accessories and a Remington rifle from the Black Wing establishment. In all, a total of $17,476 in items was found to have been "backed out" of inventory, including a couple of high-value scopes for black guns and a parts kit for a gun.

{¶ 8} As a result of the above actions, appellant Gregory S. Leach was charged with one count of theft by deception of a firearm from a federally licensed firearms dealer in violation of R.C. 2913.02(A)(3), one count of theft by deception of a firearm in violation of 2913.02(A)(3), one count of theft beyond the scope of consent of merchandise worth more than $5,000 but less than $100,000 in violation of 2913(A)(2), and one count of tampering with records resulting in a loss of more than $5,000 but less than $100,000 in violation of 2913.42(A)(1).

{¶ 9} On December 14, 2010, a jury trial commenced in this matter. During the trial, the charge for theft by deception of a firearm was dropped.

{¶ 10} At trial, the jury heard testimony from Rex Gore, the owner of Black Wing, Ronald Messick, Shirley Turrill, Robin Salvo, Judy Stadtlander, John Richardson, and Andrew Loeffler, all employees of Black Wing Shooting Center, Todd Casey, a customer of Black Wing, and Steven Leach, appellant's father.

{¶ 11} Ronald Messick, the retail manager for Black Wing, testified that during the period in question, the retail staff all shared an office. Messick and the other manager each had his own desk and computer in the office, and there was a third

computer for the retail sale staff to use for paperwork. He testified that during the time in question, the employees did not always remember to log out after they were done using the computer and that that practice was not strictly enforced. Messick recalled that he often saw appellant bring a backpack and a rifle bag or a large duffle bag for carrying rifles, ammunition, and equipment case to work with him.[1] Messick stated that he thought nothing of it, assuming that appellant was bringing in his personal weapons to shoot at the range after work or to show to people.

{¶ 12} Shirley Turrill, a salesperson with Black Wing, testified that in April 2009, she had signed up a doctor from Delaware for a concealed-carry class. The doctor had paid $175 in cash. Turrill logged the doctor's name into the class log book and noted a cash payment. She then gave the doctor a receipt and put a duplicate receipt in the back of the class log book. Turrill stated that later on, she went back to the log book and noticed that the receipt was missing. . She went to a co-worker, Judy Stadtlander, and they checked the computer and found that the transaction had been voided under Turrill's log-in code. Turrill denied that she had voided the transaction and testified that this could not occur by accident because it required multiple steps. Turrill testified that the doctor never cancelled the class through her, and he eventually took the class as originally scheduled.

{¶ 13} Judy Stadtlander similarly testified about the discovery of a voided concealed-carry-class purchase.

{¶ 14} A Black Wing customer named Todd Casey testified that he had purchased a number of rifle scopes directly from appellant. Casey testified that when he began looking at tactical rifles at Black Wing, he was directed toward appellant because

---

[1] At that time, Black Wing did not have a policy of checking employees' bags.

those were his specialty. On one occasion when Casey was looking at scopes, appellant asked whether he was looking to buy. Casey commented that he had to sell some of his guns before he could afford scopes. Appellant responded that he had some extra scopes that he had picked up over time when opportunities arose to buy them at reduced prices. Appellant was looking to sell some scopes and said that Casey could look at them and maybe bring in some of his guns to see about getting rid of them. When Casey was in the store again, appellant informed him that he had the scopes with him and pulled out a bag with four scopes in it. Although a couple of them were in boxes, Casey understood that appellant had used them for a short period of time, but decided he did not want them. Appellant told Casey that he could take them to the back of the store to look them over. Casey looked them over and told appellant that he was not sure; he would have to see what he had to mount them on. Appellant told him to just take them home, give them a try, and get back to him about them. Casey took them home and reviewed his own collection to see what he could get rid of. He eventually came back to appellant with a trade for a couple of weapons and some parts. Appellant agreed, and Casey brought the guns to the store. Appellant told Casey that trading guns in the store was frowned upon so he directed Casey to just toss them in the trunk of his car which was parked outside, and they would call it even.

{¶ 15} When presented with a list of items that disappeared from Black Wing, Casey identified several of them as items that appellant claimed to have in his collection. Casey also mentioned trading a gun bag for a knife. Casey also indicated that on a couple of occasions, he called to ask appellant to hold back new items for him,

but appellant said they were not allowed to do that and that instead he would buy the items himself, and then Casey would pay appellant directly.

{¶ 16} The jury also heard testimony from appellant's father, Steven Leach, who testified that he had been a regular customer at Black Wing for a number of years. He stated that in 2008, he received two guns as Christmas presents from appellant. One was a handgun, and another was a Remington 700 rifle. Steven testified that at some point after appellant resigned, he had a conversation with John from Black Wing concerning those guns and whether appellant had ever paid for them. During that conversation, Steven also disclosed that appellant had had a Browning gun safe delivered to his house.

{¶ 17} At the conclusion of the trial, the jury entered a verdict of guilty on all counts.

{¶ 18} On January 24, 2011, the trial court sentenced appellant to the minimum sentence on each count: three years for theft by deception of a firearm from a federally licensed firearms dealer, six months for theft beyond the scope of consent of merchandise, and six months for tampering with records. The trial court ordered the sentences to be served consecutively, for an aggregate sentence of four years. The trial court also ordered restitution in the amount of $23,295.66.

{¶ 19} Appellant now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

{¶ 20} "I. Defendant's due process rights under the state and federal constitutions were violated because there was insufficient evidence to support a verdict of guilty of

theft of a firearm where the prosecution merely alleged that defendant used stolen money to purchase the firearm through a fully and properly documented transaction.

{¶ 21} "II. Defendants [sic] rights to due process and protections from double jeopardy under the state and federal constitutions were violated when the trial court failed to merge the convictions for theft and tampering with evidence under R.C. 2941.25.

{¶ 22} "III. Defendant's rights to due process under the state and federal constitutions were violated when the trial court imposed consecutive sentences on counts three and four based on the mistaken belief that consecutive sentences were required."

I

{¶ 23} In his first assignment of error, appellant argues that there was insufficient evidence to support a conviction on R.C. 2913.02(A)(3). We disagree.

{¶ 24} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541 ("sufficiency is the test of adequacy"); *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Jenks* at 273.

**{¶ 25}** In this case, appellant is challenging his conviction for theft of a firearm in violation of R.C. 2913.02, which provides:

**{¶ 26}** "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

**{¶ 27}** " * * *

**{¶ 28}** "(3) By deception[.]"

**{¶ 29}** Appellant argues that the state failed to prove any deception, asserting that the actual purchase of the firearm was properly documented. Appellant further argues that the alleged deception of fraudulently canceling the concealed-carry class registrations resulted in a theft of money and not the theft of a firearm. Additionally, appellant argues that the actual amount of money stolen was only approximately $1,000, which would only have been classified as a fifth-degree felony rather than the first-degree felony status assigned for theft of a firearm from a federally licensed firearm dealer.

**{¶ 30}** Deception is defined in R.C. 2913.01(A):

**{¶ 31}** "(A) 'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

**{¶ 32}** Upon review, we find that appellant's actions fall squarely within the definition of deception. The deceptive scheme hatched by appellant in this case was for

the purpose of making it appear that he had paid for the firearms so that he could remove them from Blackwing. His scheme prevented Blackwing from "acquiring information" and learning that he was removing the firearm from the store without having first paid for it in full.

**{¶ 33}** Further, we find that no cash was actually stolen or removed from the store. Instead, appellant voided transactions and followed those voided transactions with bogus deposits to the firearm he had on a lay-away plan.

**{¶ 34}** Based on the foregoing, we find appellant's assignment of error not well taken, and weoverrule it.

II

**{¶ 35}** In his second assignment of error, appellant argues that the trial court erred in not merging appellant's convictions for theft and tampering with evidence. We disagree.

**{¶ 36}** R.C. 2941.25 governs multiple counts and states the following:

**{¶ 37}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶ 38}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶ 39}** In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus, the Supreme Court of Ohio held the following:

**{¶ 40}** "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. *(State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)"

**{¶ 41}** *Johnson* explained:

**{¶ 42}** "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Blankenship,* 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ('It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses' [Emphasis sic]).  If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

**{¶ 43}** "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

**{¶ 44}** "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

**{¶ 45}** "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." Id. At ¶ 48-51.

**{¶ 46}** In the instant case, appellant was convicted of one count of theft of a firearm pursuant to R.C. 2913.02(A)(3) and one count of tampering with records pursuant to R.C. 2913.42(A)(1), which provide:

**{¶ 47}** R.C. 2913.02, Theft; aggravated theft

**{¶ 48}** "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

**{¶ 49}** "* * *

**{¶ 50}** "(3) By deception; * * *"

**{¶ 51}** R.C. 2913.42, Tampering with records

**{¶ 52}** "(A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:

**{¶ 53}** "(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record[.]"

**{¶ 54}** As specifically noted in *Johnson,* it is appellant's "conduct" that must be examined in determining separate animus. Therefore, the issue post-*Johnson* is whether the offenses were committed by the same conduct i.e., " 'a single act, committed with a single state of mind.' " *Johnson,* 128 Ohio St.3d 153, 2010-Ohio-

6314, at ¶ 49, citing *State v. Brown,* 119 Ohio St.3d 447, 2008–Ohio–4569, ¶ 50 (Lanzinger, J., dissenting).

{¶ 55} With regard to the first prong of the analysis under *Johnson*, it is undisputed that it is possible for both counts to be committed with the same act. We will therefore focus our analysis on the second prong: whether, under the facts of this case, the offenses were actually committed separately or with a separate animus.

{¶ 56} The animus for the tampering-with-records charge occurred when appellant manipulated Blackwing's sales records to show canceled class registrations followed by deposits made to appellant's lay-away account.

{¶ 57} The conduct, or animus, for the theft-of-a-firearm-by-deception charge occurred when appellant physically removed the firearm from the Blackwing premises.

{¶ 58} We therefore find that appellant committed separate and distinct crimes for which he had a separate animus. Accordingly, the trial court did not err in not merging the sentences for these counts.

{¶ 59} Appellant's second assignment of error is overruled.

III

{¶ 60} In his third assignment of error, appellant argues that the trial court erred in interpreting the theft statute to require the sentences on all counts to be served consecutively. We disagree.

{¶ 61} Appellant argues that the trial court ordered the sentences on all his counts to be served consecutively only because it believed it did not have the discretion to run them concurrently.

{¶ 62} We have reviewed the trial court's sentencing entry and the transcript of the sentencing hearing and find appellant's arguments unpersuasive.

{¶ 63} At the sentencing hearing, the trial court made the following statements:

{¶ 64} "Mr. Leach, on December 15th, 2010, was found guilty by a jury of theft of a firearm from a Federally Licensed Firearm Dealer, Count 1. Count 3, theft, felony of the fourth degree. And Count 4, tampering with records, felony of the fourth degree. And at that time was referred for a presentence report. And the Court has received that, reviewed that, considered the principles and purposes of the sentencing. Also took into consideration the factors, But, in this case, there isn't much discretion the Court has since there's a mandatory prison term, which must be served consecutively to the other counts.

{¶ 65} "Under 2913(B), you did hold a position of trust and that position related to the offense, obligated you to prevent the offense or bring others committing any into justice. It's certainly in your position to facilitate the offense.

{¶ 66} "The Court also considers recidivism factors related to your history of criminal convictions. The Court finds you show no remorse for the offense. And I didn't find anything indicating recidivism unlikely.

{¶ 67} "Serious factors, again, separate serious, you had knowledge, you held a position of trust, the offense related to that. Your profession facilitated the offense, the relation to the victim facilitated the offense. Basically, those all fall under one factor.

{¶ 68} "I don't find anything indicating it's less serious than a normal offense.

{¶ 69} "Are you amenable to Community Control, probably you're amenable to Community Control. But, based on the principles and purposes of sentencing, which is

to punish you, and in doing that keep you from doing something like this again, and to serve as an example to others, the Court finds that a prison term is necessary here. And would, therefore, impose three years in prison on Count 1, which is the minimum prison term. Six months on Count 3, six months on Count 4. All to be served consecutively.

{¶ 70} "Again, they're all minimum terms, and they're required to be served consecutively under R.C. § 2913.02(B)(2)."

{¶ 71} Similarly, the trial court, in its sentencing entry, stated:

{¶ 72} "The Court has considered the record, oral statements, any victim impact statement, and the Pre-sentence Report, the principles and purposes of sentencing under RC. 2929.11, the seriousness and recidivism factors under RC. 2929.12, and the need for deterrence, incapacitation, rehabilitation, and restitution.

{¶ 73} "* * *

{¶ 74} "The sentences are Ordered to be served consecutively to one another."

{¶ 75} Based on the foregoing, we find that the trial court was aware that it had discretion with regard to Count 2 and Count 4 and that it used its discretion in this matter to order the sentences to be served consecutively.

{¶ 76} Appellant's third assignment of error is overruled.

{¶ 77} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Delaware County, Ohio, is affirmed.

Judgment affirmed.

Farmer, P. J., and Edwards, J., concur.